**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

_____

)
**ELIZABETH R. BRYANT,**                      )
                                                               )
     **Plaintiff,**                                  )
                                                               )
     **v.**                                              )     **CIVIL NO. 3:08CV719**
                                                               )
**MICHAEL J. ASTRUE,**                       )
**Commissioner of Social Security,**        )
                                                               )
     **Defendant.**                               )
_____)

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1]  Plaintiff, Elizabeth R. Bryant, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of the Defendant, Commissioner Michael J. Astrue (the "Commissioner"), denying her application for Social Security Disability Insurance Benefits ("DIB").  The Commissioner's final decision is based on a finding by the Administrative Law Judge ("ALJ") that Plaintiff was not disabled, per the Social Security Act (the "Act") and relevant regulations.

For the reasons discussed herein, it is this Court's recommendation that Plaintiff's motion for summary judgment (Docket No. 6) and motion for remand (Docket No. 7) be DENIED, that Defendant's motion for summary judgment (Docket No. 9) be GRANTED, and that the final

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C).  The Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to the extent necessary to properly analyze the case.

decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff filed for DIB on July 18, 2006, claiming disability due to chronic back strain, knee and hip arthritis, knee and hip pain, need for hip and knee replacements, high blood pressure, high cholesterol, high triglycerides, a scar on the back of the eye, and anxiety, with an alleged onset date of November 7, 2005. (R. at 122.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 52-58, 61-63.) Plaintiff requested a hearing, and, on May 12, 2008, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 22-51.) On June 25, 2008, the ALJ denied Plaintiff's application, finding that she was not disabled under the Act, despite impairments and having the residual functional capacity ("RFC") to perform less than a full range of sedentary work.[3] Specifically, the ALJ determined that Plaintiff's impairments did not preclude performance of work-related activities in her prior employment as a purchasing agent. (R. at 9-21.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government – the Disability Determination Services ("DDS"), a division of the Virginia Department of Rehabilitative Services – under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also 20 C.F.R. § 404.1503. Hearings before ALJs and subsequent proceedings are conducted by personnel of the SSA.

[3] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing RFC, the ALJ must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, i.e., eight hours a day, five days a week, or an equivalent schedule, and describe the maximum amount of each work-related activity the individual can perform based on the evidence in the record. Id.

Commissioner subject to judicial review by this Court.  (R. at 1-5.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence.  Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is more than a scintilla, less than a preponderance, and the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion.  Craig v. Charter, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'"  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589).  In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'"  Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)).  The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed.  Perales, 402 U.S. at 390.  While the standard is high, if the

ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R §§ 416.920, 4041.1520; Mastro, 270 F.3d at 177. That evaluation is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" ("SGA").[4] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends, and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R. § 404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, the impairment must cause more

---

[4] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

than a minimal effect on one's ability to function.  20 C.F.R. § 404.1520(c).  At the third step, if

the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve

months or result in death, it constitutes a qualifying impairment and the analysis ends.  20 C.F.R.

§§ 416.920(d), 404.1520(d).  If the impairment does not meet or equal a listed impairment, then

the evaluation proceeds to the fourth step, in which the ALJ must determine whether the claimant

can return to her past relevant work[5] based on an assessment of the claimant's RFC and the

"physical and mental demands of work [the claimant] has done in the past."  20 C.F.R. §§

416.920(e), 404.1520(e).  If such work can be performed, then benefits will not be awarded.  Id.

However, if the claimant cannot perform her past work, the burden shifts to the Commissioner at

the fifth step to show that, considering the claimant's age, education, work experience, and RFC,

the claimant can perform other work that is available in significant numbers in the national

economy.  20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir.

2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987)); Hall v. Harris, 658 F.2d 260,

264 (4th Cir. 1981).  The Commissioner can carry his burden in the final step with the testimony

of a vocational expert ("VE').  When a VE is called to testify, the ALJ's function is to pose

hypothetical questions that accurately represent the claimant's RFC based on all evidence on

record and a fair description of all the claimant's impairments so that the VE can offer testimony

about any jobs existing in the national economy that the claimant can perform.  Walker v.

Bowen, 889 F.2d. 47, 50 (4th Cir. 1989).  Only when the hypothetical posed represents *all* of the

---

[5] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved.  20 C.F.R. §§ 416.965(a), 404.1565(a).

claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id.
If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be
disabled and is, accordingly, entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1529(f)(1).

## IV. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since her alleged onset
date through her date of last insured. (R. at 14.) At step two, the ALJ found that Plaintiff had
the severe impairments of degenerative changes of the cervical, thoracic, and lumbosacral spine
with cervical spondylosis, thoracic and lumbosacral stenosis, lumbosacral radiculopathy, and
osteoarthritis of the knees, but that these impairments did not meet or equal any listing in 20
C.F.R. Park 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R.
at 14-15.) The ALJ next determined that Plaintiff had the RFC to perform less than a full range
of sedentary work and, due to her impairments, was limited in her ability to lift weights of ten
pounds, to climb, stoop, balance, kneel, crouch, and crawl. (R. at 15-16.)

The ALJ determined at step four of the analysis that Plaintiff's RFC did not preclude her
from performing her past relevant work as a purchasing agent. (R. at 20.) Accordingly, where
the ALJ determined that Plaintiff was capable of performing her past relevant work, it was
unnecessary to pursue the analysis to step five to determine whether, considering the claimant's
age, education, work experience, and RFC, Plaintiff was capable of performing other work that is
available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f);
Powers, 207 F.3d at 436 (citing Yuckert, 482 U.S. at 146 n.5); Hall, 658 F.2d at 264. The ALJ,
therefore, concluded that Plaintiff was not disabled and not entitled to benefits. (R. at 21.)

Plaintiff asserts that she is entitled to benefits as a matter of law, or, alternatively, she

seeks a remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J.; Pl.'s Mot. for Remand.) In support of her position, Plaintiff argues that: (1) the ALJ committed plain error by rejecting the conclusions of three treating physicians in favor of two nonexaminers with "uncertain medical credentials;" and (2) the ALJ erred by rejecting Plaintiff's testimony concerning her exertional limitations and the requirements of her past relevant work. (Pl.'s Mem. in Supp. Mot. Summ. J., "Pl.'s Mem.," at 4-7.) Defendant asserts, in contrast, that substantial evidence supports the Commissioner's decision that Plaintiff retained the RFC to perform sedentary work so as to justify the ultimate denial of benefits. (Def.'s Mot. for Summ. J. and Mem. in Supp., "Def's Mem.," at 10-18.)

1.     **Plaintiff contends that the ALJ committed plain error by rejecting the medical opinions of treating, examining physicians in favor of nonexaminers with uncertain credentials.**

Plaintiff contends that the ALJ erred by rejecting the medical opinions of three examining physicians, Dr. Jones, Dr. Gruner, and Dr. Ault, in favor of two "nonexaminers," Dr. Constant and disability examiner Stuart Solomon ("Solomon"). (Pl.'s Mem. at 4-6.) Plaintiff argues that, because the state agency failed to disclose the credentials and specializations of Dr. Constant and Solomon, the weight afforded their opinions by the ALJ is reversible error. (Pl.'s Mem. at 4-5.) Furthermore, Plaintiff argues that the ALJ failed to adhere to the proper regulatory standard when rejecting the opinions of Dr. Jones, Dr. Gruner, and Dr. Ault in favor of Dr. Constant's and Solomon's evaluations.

If, during the sequential analysis, the ALJ determines that the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's ability to do basic work activities, the ALJ must analyze the claimant's medical

records and any medical evidence from consultative examinations or medical expert evaluations. See 20 C.F.R. § 416.912(f). If the record contains a number of different medical opinions, including those from the Plaintiff's treating physicians, consultative examiners, or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. See 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d). Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if it: (1) is well-supported by medically-acceptable clinical and laboratory diagnostic techniques; and (2) is not inconsistent with other substantial evidence in the record. Craig, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, including when the physician's opinion is inconsistent with other evidence, or when the physician's opinion is not otherwise well supported. Jarrells v. Barnhart, No. 7:04-CV-00411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005). See 20 C.F.R. §§ 404.1527(d)(3)-(4), 404.1527(e).

Here, the ALJ did not err in refusing to give controlling weight to the Plaintiff's various treating physicians because their opinions were inconsistent with the other evidence of record and otherwise not well supported. Jarrells, 2005 WL 1000255, at *4; see 20 C.F.R. §§ 404.1527(d)(3)-(4), 404.1527(e). The ALJ adhered to the proper regulatory standard when he discounted the opinions of Dr. Jones, Dr. Gruner, and Dr. Ault, as their assessments were inconsistent with one another as well as each doctor's own treatment notes. Therefore, the ALJ had discretion to discount the assessments. "If any of the evidence in [the] case record, including

medical opinion(s), is inconsistent with other evidence or is internally inconsistent, [the Agency] will weigh all of the evidence and see whether [it] can decide whether [claimant is] disabled based on the evidence" presented.  20 C.F.R. § 404.1527(c)(2).  When the ALJ does "not give a treating source's opinion controlling weight, [the ALJ applies] the factors listed in  paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) and (d)(6) of this section in determining the weight to give the opinion."  20 C.F.R. § 404.1527(d)(2).

The first factor is the length of the treatment relationship between the physician and the claimant and the frequency of examinations by the physician.  20 C.F.R. § 404.1527(d)(2)(i). The longer the treating source has treated the claimant, the more weight afforded that source's opinion.  Id.  The second factor is the nature and extent of the treatment relationship.  20 C.F.R. § 404.1527(d)(2)(ii).  When reviewing the type and extent of treatment, "the more knowledge a treating source has about [the] impairment(s) the more weight" afforded to the source's medical opinion.  Id.  The third factor is supportability, such that "[t]he more a medical source presents relevant evidence to support an opinion . . . the more weight [the Agency] will give that opinion."  20 C.F.R. § 404.1527(d)(3).  The fourth factor is consistency.  20 C.F.R. § 404.1527(d)(4).  "[T]he more consistent an opinion is with the record as a whole, the more weight . . . give[n] to that opinion."  20 C.F.R. § 404.1527(d)(4).  The fifth factor is specialization, where more weight is afforded "to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."  20 C.F.R. § 404.1527(d)(5).  Finally, the Agency will consider other factors brought to its attention. 20 C.F.R. § 404.1527(d)(6).  Any other factors considered may "tend to support or contradict the opinion."  Id.

**a. Dr. Jones.**

Plaintiff first visited Dr. Jones, an orthopedic doctor, in November 1999, when Dr. Jones noted Plaintiff had "good mobility of her back," and that she had only "slight decreased rotational movement of her right hip." (R. at 289.) X-rays taken then "show[ed] mild degenerative arthritis, not severe. X-rays done of her pelvis to her hip, and the hip on the right side has significant degenerative arthritis." (R. at 289-90.) Plaintiff also consulted with Dr. Jones in 2001, in 2002, and again in 2004. (R. at 291-302.) Plaintiff returned to Dr. Jones in July 2007, at which time Dr. Jones noted that Plaintiff had "relatively mild" degenerative disease of the hip and knees. (R. at 303.) In November 2007, Plaintiff saw Dr. Jones regarding her ongoing hip pain, but Dr. Jones noted that her back pain was being followed by another doctor, Dr. Fiore. (R. at 304.) With respect to the hip pain and metatarsalgia,[6] Dr. Jones prescribed foot pads and shoe inserts, noting that surgery was "not warranted for this problem." (R. at 304.) The 2007 visits were the only visits Plaintiff had with Dr. Jones after the alleged onset date of disability.

Dr. Jones's opinion was properly afforded weight due to his specialization in the field of orthopedics and the fact that Plaintiff first visited Dr. Jones in 1999. At the same time, however, Dr. Jones's opinion may be discounted to some extent because Plaintiff infrequently visited Dr. Jones during the time period immediately leading up to and during the relevant period. Plaintiff's last visit with Dr. Jones, prior to the alleged onset date of her disability, occurred in May 2004 and her next visit after that was not until July 2007. (R. at 302-03.) Dr. Jones focused

---

[6] Metatarsalgia is "pain and tenderness in the metatarsal region." Saunders, <u>Dorland's Illustrated Medical Dictionary</u> 1162 (31st ed. 2007). The metatarsal region is the middle part of the foot, "its skeleton being the five long bones extending from the tarsus to the" toes. <u>Id.</u>

on Plaintiff's hip and knee problems in 2007, which, according to his notes, he diagnosed as relatively mild degenerative disease. (R. at 303-04.) As the doctor noted at the time, Plaintiff showed a "reasonable range of motion of both her hips and knees." (R. at 303.) The medical record concerning Plaintiff's range of motion, x-rays, cortisone injections, and recommended treatment, therefore, support Dr. Jones's opinions about Plaintiff's hip and knee problems and justify the ALJ having afforded it reasonable weight in light of the factors delineated in 20 C.F.R. § 404.1527(d). (R. at 303-04.)

Dr. Jones completed an assessment of Plaintiff on February 1, 2008, at which juncture he found that Plaintiff could lift or carry ten to twenty pounds, lift twenty pounds occasionally, and lift weights of ten pounds frequently. (R. at 305.) Dr. Jones also opined that Plaintiff could stand or work for one half hour during an eight hour work day and sit for one hour without interruption. (R. at 306.) Dr. Jones further noted, however, that Plaintiff could <u>never</u> climb, stoop, crouch, kneel, or crawl and could only poorly balance herself. (R. at 306.) Dr. Jones also concluded that Plaintiff's ability to push or pull and to reach was limited, and he affirmed that such limitations were present since November 1999. (R. at 307-08.) Accordingly, there is a significant basis in the record for the ALJ to have discounted, per 20 C.F.R. § 404.1527(d), the weight of Dr. Jones assessment based on inconsistencies with Dr. Jones's own treatment record and the records and opinions of the other treating physicians. (R. at 19.)

**b. Dr. Gruner.**

Plaintiff first visited Dr. Gruner on January 10, 2005, after her second automobile accident in January 2004, the first accident having occurred in 2001. Plaintiff consulted with Dr. Gruner due to her continuing back, knee, and hip pain. (R. at 219.) At the time, Plaintiff

described her lower back pain and low thoracic pain as "mild," and Dr. Gruner noted that she could "usually [] sit without any difficulty." (R. at 219.) Dr. Gruner also noted that Plaintiff "has been told that she can engage in all her normal activities and that only her pain level will dictate what she can do." (R. at 222.) Plaintiff visited Dr. Gruner again in February 2005 and again in March 2005 when she, concurrently, underwent a successful epidural block to relieve thoracic pain. (R. at 214.) Plaintiff, thereafter, visited Dr. Gruner in April when the doctor's notes suggest that Plaintiff's pain was diminishing.[7] (R. at 214.) Plaintiff returned again to Dr. Gruner in August 2005, and also on November 7, 2005, the alleged onset date of disability, when Plaintiff reiterated to the doctor the success of subsequent epidural blocks in relieving her pain.[8] (R. at 209.) Plaintiff returned to see Dr. Gruner on May 22, 2006, and described her symptoms as having "waxed and waned" since her earlier November 2005 visit. (R. at 204.) Dr. Gruner noted at that visit, nevertheless, that she continued to have lower back pain that increased when lifting or bending. (R. at 204.) Plaintiff's next visit with Dr. Gruner was on November 8, 2006, when the doctor noted that Plaintiff had complained of "much more discomfort in the thoracic and lumbar area [than] in the past." (R. at 199.) Plaintiff next visited Dr. Gruner on November

---

[7] "The patient returns with continued but decreased complaints . . . . Her lower back seems to be improving. She is denying any numbness or tingling and is able to engage in more activities now then she did on her last visit because of the decreased pain. However she still states that she has to be careful about her activities and still fatigues easily with walking but continues to be able to sit without too much difficulty." (R. at 214.)

[8] "I'm happy to report that since her last visit here on August 1, 2005 she tells me today that she's feeling pretty good especially after her last epidural block. She still finds that standing bothers her the most with her lower back beginning to ache but without any leg pain. She still has difficulty with lifting and anything over 15 pounds is extremely difficult for her. She denies any major problems with driving and states that for most of her activities she seems just to have less endurance." (R. at 209.)

14, 2007, after cancelling three appointments with him during the time since her last visit in November 2005. (R. at 322.) Dr. Gruner's November 2007 notes reflect that Plaintiff's back pain had increased. (R. at 322.) Dr. Gruner saw Plaintiff again on March 17, 2008 when the doctor's notes reflect that there were "no significant changes in her pain level is [sic] in her spine or other areas although she does feel that her lower back is worse as is sure [sic] left knee." (R. at 313.)

Dr. Gruner evaluated Plaintiff's musculoskeletal condition and her particular ranges of motion and flexibility during her visits. (R. at 202, 207, 211, 216, 222, 325.) From January 2005 to November 2005, Plaintiff's neck range of motion either improved or remained stable, as did her lumbar extension and forward flexibility abilities. (R. at 211, 216, 222.) While Plaintiff's lumbar extension decreased between November 2005 and May 2006, it remained the same from May 2006 through November 2007, and Plaintiff's range of motion and forward flexibility did not decrease until November 2007, having improved or remained stable from January 2005 to November 2006. (R. at 202, 207, 211, 216, 222, 325.)

The objective evidence contained in Dr. Gruner's treatment notes justify his opinion being afforded weight due to his specialization in the field of spinal neurosurgery and the regularity with which Dr. Gruner treated plaintiff during the relevant time periods of 2005 and 2006. (R. at 199-219.) Yet, Dr. Gruner's notes generated before Plaintiff's visit on the alleged onset date of her disability indicate either improvement or stability in her condition, including pain levels. In addition, Plaintiff cancelled three visits in 2007 and did not see Dr. Gruner for

one year.[9]  (R. at 322.)  Thereafter, Plaintiff complained of increased pain, fatigue, and decreased mobility.  (R. at 322.)  However, given the one-year break in treatment, there is a basis for the ALJ to have discounted the opinion of Dr. Gruner, especially when it is noted that the doctor first treated Plaintiff in January 2005, a relatively recent period and a short period of time prior to the alleged onset date of disability.  See 20 C.F.R. § 404.1527(d)(2)(i).

Dr. Gruner completed an assessment of Plaintiff on March 20, 2008 in which he concluded that Plaintiff could lift and carry twenty pounds, occasionally lift or carry a maximum of ten pounds, and frequently lift or carry a maximum of five to ten pounds.  (R. at 318.)  Dr. Gruner also found that Plaintiff could walk from three to four hours during an eight hour day and up to one hour without interruption, and he further determined that Plaintiff could sit for three hours during an eight hour day, as well as uninterrupted from 60 to 90 minutes.  (R. at 319.) However, Dr. Gruner further noted that Plaintiff could occasionally climb, balance, kneel, and crawl, and could rarely stoop or crouch and that Plaintiff's abilities to push or pull and to reach were limited.  (R. at 319-20.)  Dr. Gruner affirmed that such limitations were present since December 1, 2006.  (R. at 320.)  Accordingly, there is a significant basis for the ALJ to have discounted, per 20 C.F.R. § 404.1527(d), the weight to be afforded Dr. Gruner's assessment based on the inconsistencies in the doctor's own treatment records and the records and opinions of the other treating physicians.  (R. at 17-19.)

### c. Dr. Ault and Dr. Miller.

Dr. Ault and Dr. Miller both treated Plaintiff for symptoms of diabetes, hypertension, and

---

[9] Dr. Gruner's November 14, 2007 treatment notes indicate that Plaintiff failed to adhere to prescribed physical therapy, and that Dr. Gruner did "not believe this patient was overly motivated to engage in any type of exercise program to get well."  (R. at 322.)

high cholesterol. (R. at 229-52.) While Dr. Ault and Dr. Miller each noted Plaintiff's lower back pain (R. at 232), neither evaluated Plaintiff in the capacities that Dr. Jones and Dr. Gruner had done.

Dr. Ault completed an assessment of Plaintiff on February 11, 2008, when he concluded that Plaintiff could lift and carry less than fifteen pounds, occasionally lift or carry a maximum of less than seven to eight pounds, and frequently lift or carry a maximum of less than seven to eight pounds. (R. at 272.) Dr. Ault further found that Plaintiff could walk for a maximum of less than three to four hours during an eight hour day, and less than ten minutes without interruption. (R. at 273.) Dr. Ault also concluded that Plaintiff could sit for a total of two to three hours during an eight hour day, and less than one hour without interruption, and that Plaintiff could never climb, balance, stoop, crouch, kneel, or crawl. (R. at 273.) In addition, Dr. Ault concluded that Plaintiff's ability to reach was limited, and that she was not able to push or pull. (R. at 274.) However, Dr. Ault did not confirm a date on his assessment memo on which these conditions had first presented. (R. at 275.) Dr. Miller did not complete an assessment.

The ALJ properly discounted the weight to be given the treatment notes of Dr. Ault and Dr. Miller given the limited nature and extent of Plaintiff's treatment relationship with each doctor, and because neither was a specialist in a field of medicine relevant to the conditions of which Plaintiff complained. See 20 C.F.R. §§ 404.1527(d)(2)(ii) & 404.1527(d)(5). In addition, the ALJ properly discounted, per 20 C.F.R. § 404.1527(d), the weight to be given Dr. Ault's assessment, based on inconsistencies with his own treatment record, and the records and opinions of other treating physicians. (R. at 17-19.)

The ALJ properly considered the fact that each of the three assessments completed by Dr.

Jones, Dr. Gruner, and Dr. Ault are inconsistent with each other when he afforded some, but not controlling, weight to them. (R. at 19.) Although each of the three assessments was completed in either February or March 2008, a period of temporal proximity, there are inconsistencies among the assessments. Not one of the three physicians agreed upon the amount of weight that Plaintiff could frequently or occasionally lift and carry. (R. at 272, 305, 322.) Nor did they agree upon the length of time for which Plaintiff could sit, walk, or stand. (R. at 273, 306, 323.) While Dr. Ault and Dr. Jones agreed on several of Plaintiff's limitations as to postural activities, including never being able to climb, stoop, crouch, kneel, or crawl, Dr. Gruner found that Plaintiff could occasionally climb, balance, kneel, and crawl. (R. at 273, 306, 319.) Dr. Gruner supported his findings by reference to x-rays and MRIs, but Dr. Ault and Dr. Jones listed no such support. (R. at 319.) In fact, Dr. Ault simply listed "spinal stenosis" in support of his postural activities assessment. (R. at 273, 306, 319.) Accordingly, the ALJ properly afforded more weight to the assessment of Dr. Gruner because he supported his assessment with medical evidence, rather than simply a conclusory diagnosis, as did Dr. Ault. See 20 C.F.R. § 404.1527(d)(3).

The three assessments were especially inconsistent in regards to Plaintiff's physical functions, particularly reaching and pulling or pushing. (R. at 274, 307, 323.) Indeed, the evidence demonstrates that: (a) each doctor's individual assessment was inconsistent with his earlier treatment notes; and that (b) there are inconsistencies among the three assessments. Thus, the ALJ properly discounted the assessments of each of the three physicians. (R. at 19-20.)

**d. The state agency medical consultants' findings.**

The ALJ found that despite not having the chance to examine the Plaintiff, Dr. Constant's

and Solomon's evaluations were "consistent with the actual objective medical findings and conservative treatment of the claimant's treating physicians, and with [Plaintiff's] admitted activities of daily living." (R. at 20.) On December 6, 2006, Dr. Constant performed a RFC assessment. (R. at 254-60.) Dr. Constant concluded that, based on the evidence in Plaintiff's record, Plaintiff's statements were only "partially credible." (R. at 259.) Dr. Constant's RFC assessment recited Plaintiff's established impairments and the symptoms of those impairments. (R. at 259.) Dr. Constant evaluated the relevant medical records and reached a reasonable conclusion based on the objective evidence. (R. at 259.) On February 16, 2007, Solomon assessed Plaintiff's RFC and affirmed Dr. Constant's December 2006 conclusions. (R. at 269.)

Plaintiff argues that due to "the non-existent credentials and specialties" of Dr. Constant and Solomon, their RFC assessments ought to be considered "weightless." (Pl.'s Mem. at 5.) Plaintiff argues that "[t]he agency is clearly required to display [consultants'] credentials and specialization of their medical experts." (Pl.'s Mem. at 4-5 (citing 20 C.F.R. § 404.1527(d)(5).) Section 404.1527(d)(5) simply states that "[w]e generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5). It does not support Plaintiff's interpretation.

20 C.F.R. § 404.1527(f) controls with regard to the evaluation of the opinions of nonexamining sources such as Dr. Constant and Solomon. ALJ's are not bound by the findings of state agency medical consultants. But, if an ALJ chooses to consider the findings of state agency medical consultant's, those findings are opinion evidence, and the ALJ's treatment of such opinion evidence must be undertaken pursuant to Section 404.1527. If the ALJ decides not

to give controlling weight to the findings of a treating source, then the ALJ must explain what weight was afforded to the nonexamining state agency consultant(s). 20 C.F.R. § 404.1527(f)(2)(ii).[10]

Here, the ALJ properly discounted the weight afforded to the opinion evidence presented by the three treating physicians. Further, the ALJ, per Section 404.1527(f) and SSR 96-6p, stated why he afforded great weight to the state agency consultants.[11] (R. at 20.) In contrast to Plaintiff's assertions, the ALJ reviewed the entire record and relied not only upon his evaluation of the treating physicians' findings and nonexamining consultants' assessments, but also upon the objective evidence in the Record. (R. at 20.) The ALJ's own examination of Plaintiff at the May 2008 hearing also supports the ALJ's decision, and the decision is otherwise supported by the objective evidence in the Record. (R. at 38-45.) Therefore, the ALJ did not commit plain error when he discounted the opinion evidence of the three treating physicians, and accepted the findings of two nonexamining state agency consultants.

**2.      Plaintiff contends that the ALJ erred by contradicting Plaintiff's testimony on her exertional limitations and the requirements of her past relevant work.**

Plaintiff contends that the ALJ erred when he discounted the credibility of Plaintiff's

---

[10] SSR 96-6p, cited by Plaintiff, supports such logic: ALJ's "are not bound by findings made by state agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions." SSR 96-6p. The ALJ must evaluate the RFC assessment of a state agency medical consultant "considering all of the factors set out in the regulations for considering opinion evidence." SSR 96-6p.

[11] The ALJ noted in this regard that: "[a]lthough these consultants did not have the opportunity to observe the claimant or the opportunity to consider additional evidence submitted subsequent to their review of the record, the undersigned gave their assessment great weight because it is consistent with the actual medical findings and conservative treatment of the claimant's treating physicians, and with [Plaintiff's] admitted activities of daily living." (R. at 20 (emphasis added).)

testimony regarding the limitations of her exertional abilities and the requirements of her past relevant work as a purchasing agent.[12]  (Pl.'s Mem. at 6-7.)  However, instead of only relying on Plaintiff's testimony regarding the physical requirements of her past relevant work, the ALJ relied on descriptions provided in two exhibits (Ex.'s 2E and 3E) that provide substantial evidence for the ALJ's related findings.  (R. at 21, 121-30, 131-37.)

### a. Plaintiff improperly relies on Lovejoy v. Heckler.

Plaintiff argues that Lovejoy v. Heckler stands for the proposition that when a claimant's written job description conflicts with a description provided by the claimant, the description provided by the claimant's evidence ought to resolve any conflict.  (Pl.'s Mem. at 6 (citing Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986)).)  However, a review of Lovejoy indicates that Plaintiff's interpretation of the holding is mistaken.

In Lovejoy, the claimant was awarded disability benefits by an ALJ because he concluded that the claimant was disabled, and that the claimant could not perform past relevant work involving light to medium exertional levels.  Lovejoy, 790 F.2d at 1115.  The Appeals

---

[12] Plaintiff's work as a purchasing was properly deemed past relevant work by the ALJ. Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved.  20 C.F.R. §§ 416.965(a), 404.1565(a). First, SGA is work that is both substantial and gainful; it is "work activity that involves doing significant physical or mental activities."  20 C.F.R. § 404.1572(a).  Gainful work activity is work activity done for "pay or profit."  20 C.F.R. § 404.1572(b).  While the ALJ correctly found that Plaintiff was not engaged in SGA at the time of her application for DIB, Plaintiff had engaged in SGA when previously employed as a purchasing agent.  Plaintiff worked eight hours per day, five days a week, and was compensated annually at $27,000.  (R. at 123.)  Plaintiff did significant physical and mental activities while working for "pay or profit."  20 C.F.R. § 404.1572(b).  Second, Plaintiff was a purchasing agent from November 1971 to March 2002.  (R. at 123.)  The work occurred in the last fifteen years, and Plaintiff worked for nearly thirty-one years, long enough to learn the basic functions involved.

Council reversed the ALJ's decision, finding that the claimant's past relevant work was sedentary. Id. at 1115-16. The Secretary adopted this decision, but a court subsequently held that the Appeals Council erred by reversing the ALJ. Id. at 1116. Then, the reviewing court did not accept the recommendation of the lower court. Id. Ultimately, the Fourth Circuit reversed the decision of the Appeals Council, finding that the Secretary's choice to accept the Appeals Council's decision was erroneous, and the Fourth Circuit vacated the District Court's holding. Id. at 1117.

In Lovejoy, the Appeals Council held that the claimant did not seek treatment for severe pain, and, thus, it discredited the claimant's subjective complaints of pain. Id. at 1116. The Fourth Circuit, reversing the Appeals Council, took "into account the findings of the ALJ who observed claimant's condition at the hearing and was in a position to evaluate the credibility of her testimony." Id. Further, the claimant's testimony regarding her inability to seek treatment was "uncontradicted on the record." Id. at 1117. Unlike the case at hand, Lovejoy does not discuss the effects of contradicting statements by the Plaintiff about her past relevant work or personal capabilities. Thus, Plaintiff's reliance on Lovejoy is misplaced.

More specifically, Plaintiff's May 2008 testimony regarding the physical requirements of her past relevant work as a purchasing agent is contradicted by her July 2006 teleclaim form(s). (R. at 118-37.) On July 18, 2006, Plaintiff informed the interviewer that her job as a purchasing agent required her to purchase lumber, complete paperwork, use the telephone, and complete inventory control duties. (R. at 123.) Plaintiff was required to use machines, tools, and equipment, to possess technical knowledge and skill, and to write and complete reports. (R. at 123.) Physically, the position required Plaintiff to walk one hour per day, stand one hour per

day, and sit six hours per day.  (R. at 123.)  Plaintiff was <u>not</u> required to climb, stoop, kneel, crouch, crawl, or handle large objects.  (R. at 123.)  Plaintiff was required to reach four hours per day and write, type, or handle small objects six hours per day.  (R. at 123.)  When asked to lift and carry objects, Plaintiff did so to complete paperwork.  (R. at 123.)  The heaviest weight lifted by Plaintiff was less than ten pounds, and Plaintiff frequently lifted weights of less than ten pounds.  (R. at 123.)  Plaintiff also spent one hour per day supervising three employees.  (R. at 123-24.)

However, Plaintiff testified before the ALJ that she "didn't work at [her] desk very frequently."  (R. at 33.)  Plaintiff further testified that when performing inventory control, she could be walking and on her feet for "three or four hours, off and on, all day long."  (R. at 47.)  When necessary to do "heavy lifting" Plaintiff, would attempt to do it herself, or ask for help if unable to do so independently.  (R. at 47.)  When asked if her job as a purchasing agent required her to "do any kind of climbing or steps, ladders,"  Plaintiff responded that she "climbed on top of that building a [sic] many of times with the buildings, grounds, and maintenance of the building."  (R. at 47.)  Plaintiff also testified that she "hung from the ceiling many times turning on the AC and the heating and cooling."  (R. at 47.)  The inconsistencies between Plaintiff's teleclaim forms and her testimony before the ALJ regarding her past relevant work as a purchasing agent are obvious.  Furthermore, Plaintiff, in July 2006, informed an interviewer that her purchasing agent work never required her to climb.  (R. at 123.)  But, as noted, Plaintiff testified before the ALJ that she had frequently climbed atop the roof of a building and that she had "hung from the ceiling many times."  (R. at 47.)  Based on such inconsistencies, the ALJ afforded Plaintiff's original description of her purchasing agent work controlling weight, but not

her testimony, and there is obviously a sufficient and substantial basis for the ALJ to have done so. (R. at 21.)

**b. Exhibits 2E and 3E are admissible and were properly considered by the ALJ.**

Plaintiff argues that because Exhibits 2E and 3E were unsigned, such exhibits are "inadmissible *ab initio*." (Pl.'s Mem. at 6 (citing Hooper v. Heckler, 752 F.2d 83, 84 n. 2 (4th Cir. 1985)).) Again, Plaintiff has misinterpreted a holding of the Fourth Circuit; nowhere does Hooper suggest that such an unsigned report is inadmissible. At most, the Fourth Circuit hesitated to endorse a practice of the SSA.[13] Further, Plaintiff's counsel had the opportunity to object to the introduction of Exhibits 2E and 3E at the outset of the May 12, 2008 hearing before the ALJ. Plaintiff's counsel did not have any objections to the file of all the exhibits, which included 2E and 3E.[14] Plaintiff's counsel therefore waived any objection to the admissibility of the subject exhibits by failing to object at the hearing. Cf. Jones v. Owens-Corning Fiberglas Corp., 69 F.3d 712, 716 (4th Cir. 1995) (affirming the district court's acceptance of affidavits in

---

[13] "The unsigned report of Dr. Holler's conversation was admitted into evidence without objection. We note, however, that the Secretary's practice of obtaining such evidence is of a questionable propriety." Hooper v. Heckler, 752 F.2d 83, 84 n.2 (4th Cir. 1985). The report came from a telephone conversation between a state agency medical consultant and the claimant's treating physician, regarding claimant's subjective complaints of pain. Id. at 84.

[14] The hearing transcript reflects this discourse between the ALJ and Plaintiff's counsel:

ALJ:    Okay. I have previously marked in the electronic file Exhibits 1-A through 20-F. Did you have a chance to review the file Mr. Cabanall [phonetic]?
ATTY:   Yes, I did.
ALJ:    Any objections to the previously marked exhibits?
ATTY:   No objections.
ALJ:    Do we have everything in this case?
ATTY:   I believe so, Your Honor.

(R. at 26-27 (Hr'g Tr. at 5-6).)

support of plaintiffs' position at the summary judgment stage where Defendants did not submit opposing affidavits to suggest that there was any genuine issue as to a material fact in dispute). Therefore, Exhibits 2E and 3E were admissible and properly considered by the ALJ.

**c. The ALJ's decision comports with SSR 82-62.**

Plaintiff further argues that the ALJ erred because he failed to consider Plaintiff's ability to perform her past relevant work in light of the factors listed in SSR 82-62. (Pl.'s Mem. at 6-7.)[15] Nevertheless, the ALJ met the requirements of the factors listed in SSR-82-62 by relying on Plaintiff's past statements, as recorded in July 2006, to determine the physical demands of her job as a purchasing agent. (R. at 118-37.)

First, the ALJ carefully appraised the entire record and objective evidence, including testimony by the Plaintiff regarding her physical limitations and the treatment notes and assessment of her treating physicians, Section IV.1 <u>supra</u>, to determine whether Plaintiff could satisfy the requirements of her past relevant work. (R. at 20-21.) The ALJ's decision as to Plaintiff's RFC "assessment [was] supported by the actual objective findings of the claimant's treating physicians, results of diagnostic tests, the claimant's admitted activities of daily living

_____

[15] The relevant portion of SSR 82-62, on which Plaintiff relies, states:

The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining skill level, exertional demands, and nonexertional demands of such work. Determination of the claimant's ability to do [past relevant work] requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources . . . .

SSR 82-62.

and by the state agency consultants' functional assessment."  (R. at 20.)

Secondly, the ALJ carefully appraised the medical evidence establishing that Plaintiff's impairments limited her ability to meet the physical and mental requirements of the position of a purchasing agent.  The ALJ considered medical evidence on the record in reaching his decision, Section IV.1 supra.  The ALJ found that due to Plaintiff's impairments, Plaintiff "could perform the exertional demands of sedentary work[16] except that she could lift and carry weights of ten pounds occasionally and less than ten pounds frequently, and could occasionally climb, stoop, balance, kneel, crouch and crawl through her date last insured."  (R. at 20.)

Finally, no other evidence suggests that the ALJ erred by not consulting an outside source in regard to the requirements of Plaintiff's past relevant work.  The totality of the circumstances, including the credibility of Plaintiff, supports the ALJ's finding that Plaintiff was not disabled or precluded from returning to work as a purchasing agent.  The ALJ's ruling comports with the factors and meaning of SSR 82-62.  SSR 82-62 which states that when an ALJ finds that an individual has the capacity to perform a past relevant job, the decision must contain findings of fact as to: (1) the individual's RFC; (2) the physical and mental demands of the past job; and (3) the individual's RFC that would permit a return to the past position.  SSR 82-62.

The ALJ made a finding of fact as to Plaintiff's RFC that Plaintiff was able to perform her past relevant work "as it was actually performed" as of the date last insured.  (R. at 20.)  The ALJ also made a finding of fact as to the physical and mental demands of Plaintiff's job based on

---

[16] "Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a) (2007).

her written descriptions and her testimony. (R. at 20.) Thus, the ALJ concluded that Plaintiff, "with a [RFC] for a limited range of sedentary work . . . could perform her past relevant work as a purchasing agent as she described in that job in Exhibits 2E and 3E." (R. at 21.) The ALJ's decision meets each of these three required findings of fact.

### d. The ALJ did not need to consult a Vocational Expert ("VE").

Plaintiff finally argues that because the ALJ only referred to Exhibits 2E and 3E, which were purportedly inadmissible, there was no other evidence to suggest that Plaintiff's former job as a purchasing agent was a sedentary job. (Pl.'s Mem. at 7.) During the sequential analysis and prior to determining whether the Grids apply at the fifth step of the analysis, an ALJ must first determine the claimant's RFC. 20 C.F.R. § 404.1569 (2007); SSR 83-10. Based on the RFC determination, the ALJ must then consult the Grids to determine if the claimant meets a rule or listing in the Grids. 20 C.F.R. § 404.1569; SSR 83-10. The Grids categorize jobs by their physical-exertion requirements,[17] including sedentary, light, medium, heavy, and very heavy. See SSR 83-10. There are numbered tables for the sedentary, light, and medium levels (tables 1, 2, and 3, respectively). SSR 83-10; C.F.R. Pt. 404, Subpt. P, App. 2.

Based on the claimant's RFC, the ALJ must first determine which table to apply, i.e., if the claimant's RFC limits him to a sedentary exertional level, then Table No. 1 ought to be applied. Next, based on the claimant's age, education, and previous work experience, the rule directs a finding of "disabled" or "not disabled." Utilization of the Grids is predicated on the

---

[17] A claimant's exertional limitations determine the proper exertional lever for the claimant's situation. See SSR 83-10. An exertional limitation is an impairment-caused limitation which affects one's capability to perform an exertional activity (strength activity) such as sitting, standing, walking, lifting, carrying, pushing, and pulling. SSR 83-10.

claimant suffering from exertional limitations, and the Grids are not applicable if the claimant suffers solely from nonexertional limitations. 20 C.F.R. § 404.1569(a); <u>see</u> 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, § 200.01(e)(1) ("The rules do not direct factual conclusions of disabled or not disabled for individuals with solely nonexertional type impairments."). The reason for the rule is that nonexertional limitations may nevertheless limit a claimant's ability to perform a full range of unskilled occupations at a given exertional level. Thus, where a claimant suffers only exertional limitations, the ALJ must consult the Grids to determine eligibility for benefits. <u>See</u> <u>Walker v. Bowen</u>, 889 F.2d 47, 49 (4th Cir. 1989); <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 (9th Cir. 1989). At the same time, if a claimant suffers from both exertional and nonexertional limitations, then the ALJ must consult the Grids first to determine whether a rule directs a finding of disabled based on the strength of the requirement alone. <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App. 1, Table 1, § 200.01(e)(2).

When analyzing a claimant's ability to perform sedentary work under the Grids, the ALJ must determine whether the claimant, based on his RFC, has any additional exertional limitations that may erode the sedentary occupational base. <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201(h)(3); SSR 96-6p. Sedentary work "represents a significantly restricted range of work, and individuals with a maximum sustained work capability limited to sedentary work have very serious functional limitations." 20 C.F.R. Pt 404, Subpt. P, App. 2 § 201(h)(4). A finding of "disabled" may be appropriate for some individuals who are unable to perform a full range of sedentary work. <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201(h)(3); SSR 96-6p. However, "the inability to perform a full range of sedentary work does not necessarily equate with a finding of 'disabled.'" 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201(h)(3). To determine whether an

individual's exertional limitations significantly erode the sedentary occupational base, an ALJ will examine the type and extent of additional exertional limitations the claimant suffers from and compare those to the requirements noted for sedentary work. Id. The analysis "requires an individualized determination that considers the impact of the limitations or restrictions on the number of sedentary, unskilled occupations or the total number of jobs to which the individual may be able to adjust, considering his or her age, education, and work experience, including any transferable skills or educations providing for direct entry into skilled work." Id. Where the effect of additional exertional limitations on the occupational base is unclear, it may be appropriate for the ALJ to consult a VE. See SSR 96-6p.

Here, the issue is whether Plaintiff's exertional limitations, as identified by the ALJ, significantly erode the sedentary occupational base. The ALJ gave great weight to the state agency consultants' findings that Plaintiff could occasionally lift ten pounds, frequently lift or carry less than ten pounds, stand or walk two hours in an eight hour work-day, sit for six hours in an eight hour work-day, and occasionally climb, balance, stoop, kneel, crouch, and crawl. (R. at 20, 256.) The ALJ concluded that Plaintiff had the RFC to perform less than a full range of sedentary work, but, nonetheless, her RFC did not preclude the performance of work as a purchasing agent. (R. at 15-16; 20.) SSR 96-6p, the relevant ruling in regard to the issue, supports the ALJ's decision not to consult a VE in reaching this disability determination.[18]

_____

[18] SSR 96-6p sets forth guidelines that the ALJ should follow in evaluating a claimant's ability to do less than a full range of sedentary work. "Limitations or restrictions on the ability to push or pull will generally have little effect on the unskilled sedentary occupational base." SSR 96-6p. "Postural limitations or restrictions related to . . . climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually

Plaintiff was able, at the time of and past the onset date of her alleged disability, to perform the required functions of sedentary work as a purchasing agent. (R. at 21.) The ALJ, therefore, properly concluded that Plaintiff's limitations did not preclude her return to past relevant work.

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (Docket No. 6) and motion for remand (Docket No. 7) be DENIED, that Defendant's motion for summary judgment (Docket No. 9) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable James R. Spencer and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within ten (10) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____/s/_____
Dennis W. Dohnal
United States Magistrate Judge

Richmond, Virginia
Dated: July 15, 2009

---

required in sedentary work." Id. The sedentary occupational base will be eroded when a claimant's ability to lift or carry, manipulate items with her finger and hands, or her ability to walk or stand is diminished beyond that required for sedentary work. Id.